Filed 11/3/22  P. v. Terrell CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, | B318180 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. A039369) |
| v. | |
| JAMARA DELVIN TERRELL, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Laura L. Laesecke, Judge.  Dismissed.

Robert D. Bacon, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

## INTRODUCTION

Appellant Jamara Delvin Terrell appealed following the superior court's denial of his resentencing petition under Penal Code former section 1170.95 (now § 1172.6).[1] Appellant's counsel filed a brief on appeal raising no issues and invoking *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*). Because neither appellant nor his counsel raised a cognizable claim of error, we dismiss the appeal as abandoned. (*People v. Serrano* (2012) 211 Cal.App.4th 496 (*Serrano*).)

## FACTUAL AND PROCEDURAL BACKGROUND

The following facts about the initial offenses are from our nonpublished opinion affirming appellant's conviction, *People v. Terrell* (Aug. 12, 1993, B053270).

"In the early afternoon of February 3, 1988, Charles Vinson, who was repairing a vehicle, saw appellant, whom he knew as 'Green Eyes,' standing in a parking lot with another man. Vinson also saw the victim[,] Homer Webster[,] in the area. Vinson heard appellant or the other man say, 'Let's get the gold chain.' Appellant appeared to check to see if his handgun was loaded. Webster went around the side of a building and toward its front. Appellant and the other man took separate routes around the building.

"Hope Black was walking to her cousin's home when, from a distance of about nine feet, she saw appellant, whom she knew as 'Green Eyes,' standing with another man. Black saw Webster

---

[1] Effective June 30, 2022, Penal Code section 1170.95 was renumbered section 1172.6, with no change in text (Stats. 2022, ch. 58, § 10). All further statutory references are to the Penal Code unless otherwise indicated.

standing about twelve feet away from appellant, facing him. Appellant said to Webster, 'Man, give me your chain,' or 'your caine.' To Black, 'caine' meant cocaine. Appellant was pointing a handgun at Webster. Webster said, 'Man, I'm not giving you nothing.' Black said, 'Man, why don't you give him whatever he want, you know.' Appellant shot Webster once. Webster did not fall. Appellant fired several more shots in rapid succession, and Webster fell to the ground. Appellant and the other man fled. Black paused for about a minute and ran.

"Webster died of multiple gun shot wounds . . . .

"Vinson heard four or five gunshots. About two minutes later, Vinson saw Black. Black was crying and yelled, 'They shot him. They shot him.' . . . . [Black] told the police what she had observed, gave them a description of the appellant, and later identified him in a photographic display. . . . Vinson also identified appellant in a photographic display.

"Appellant was arrested on February 10, 1988. En route to the police station, appellant said spontaneously, 'Well, it looks like I'm going to the gas chamber.'

"In defense, Paula Reece, in whose apartment appellant lived, testified he had been with her at the time of the murder. . . . Several friends and family members testified that appellant's nickname was 'Blue' although his eyes were green or hazel."

In April 1990, a jury convicted appellant of first degree murder (§ 187), found that he personally used a firearm in the commission of the offense (§ 12022.5), and found true the special circumstance that the murder occurred while appellant was attempting robbery. The jury also found appellant guilty of attempted second degree robbery. (§§ 211, 664.) The trial court sentenced appellant to life in prison for the murder, plus two

3

years for the firearm use, and two years for the attempted robbery.

In August 2019, appellant filed a petition for resentencing under former section 1170.95. He checked boxes on the form stating that he had been convicted of felony murder, he was not the actual killer, he was not a major participant in the crime, and he did not act with reckless indifference to human life.

The superior court ordered that counsel be appointed for appellant. The People filed two written responses to appellant's petition for resentencing, arguing in part that appellant was not eligible for resentencing because the jury found that he was the actual killer, and the jury was not instructed on aiding and abetting. In support of their responses, the People submitted the 1993 appellate opinion, as well as the verdict form and jury instructions from the trial.

At a hearing, appellant's counsel admitted that based on the jury's findings and jury instructions, it was unlikely that appellant could make a prima facie case. The court denied the petition, stating that appellant failed to establish a prima facie case for resentencing. (See *People v. Lewis* (2021) 11 Cal.5th 952, 972 ["[T]he parties can, and should, use the record of conviction to aid the trial court in reliably assessing whether a petitioner has made a prima facie case for relief"].)

Appellant timely appealed.

## DISCUSSION

Appellant's counsel filed a brief requesting that we independently review the record for error. (*Wende, supra,* 25 Cal.3d 436, 441.) We directed counsel to send the record and a copy of the brief to appellant, and notified appellant of his right to respond within 30 days. We have received no response.

4

Appellant is not entitled to *Wende* review, and we therefore dismiss the appeal pursuant to *Serrano*. "In an indigent criminal defendant's first appeal as a matter of right, the Court of Appeal must independently review the record if appointed counsel represents he or she has found no arguable issues." (*Conservatorship of Ben C.* (2007) 40 Cal.4th 529, 535, citing *Anders v. California* (1967) 386 U.S. 738; *Wende, supra*, 25 Cal.3d 436.) A defendant is not entitled to such review "in subsequent appeals." (*Serrano, supra*, 211 Cal.App.4th at p. 503; see also *People v. Kisling* (2015) 239 Cal.App.4th 288, 290.) As this is an appeal from a motion for postjudgment relief, not a first appeal as a matter of right, appellant is not entitled to *Wende* review. (See *People v. Cole* (2020) 52 Cal.App.5th 1023, 1028, review granted Oct. 14, 2020, S264278 (*Cole*); *People v. Scott* (2020) 58 Cal.App.5th 1127, review granted Mar. 17, 2021, S266853 (*Scott*).)[2] We agree with our colleagues in *Scott, supra*, 58 Cal.App.5th at p. 1131, that we retain discretion to conduct a *Wende*-type review, but that such discretion "should be exercised when there is some reason to do so, not as a routine matter." There is no reason to do so here, where it is apparent that appellant's section 1172.6 petition cannot succeed as a matter of law. (See *Scott, supra*, 58 Cal.App.5th at pp. 1131-1132.)

Because neither appellant nor his counsel has raised any claims of error, we dismiss the appeal as abandoned. (*Scott,*

---

[2] In a case currently on review in the Supreme Court, *People v. Delgadillo*, S266305, the Supreme Court is considering what procedures appointed counsel and the Courts of Appeal must follow when counsel determines that an appeal from an order denying postconviction relief lacks arguable merit.

*supra*, 58 Cal.App.5th at p. 1132; *Cole, supra*, 52 Cal.App.5th at p. 1040; *Serrano, supra*, 211 Cal.App.4th at pp. 503-504.)

## DISPOSITION

The appeal is dismissed.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


COLLINS, J.

We concur:


MANELLA, P. J.


WILLHITE, J.


6